Engels J. Tejeda (UT 11427)
Kody L. Condos (17186)
**HOLLAND & HART LLP**
222 South Main Street, Suite 2200
Salt Lake City, Utah 84111
Telephone: (801)799-5800
EJTejeda@HollandHart.com
KLCondos@HollandHart.com

Kasey Diba (CA SBN 171081) [pro hac pending]
Mathew Sichi (CA SBN 306165) [pro hac pending]
**FINNEGAN & DIBA, A LAW CORPORATION**
3660 Wilshire Boulevard, Suite 800
Los Angeles, California 90010
Telephone: (213) 480-0292
KDiba@FDLegal.com
MSichi@FDLegal.com

*Attorneys for Plaintiff, Hope International Hospice, Inc.*

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| HOPE INTERNATIONAL HOSPICE, INC, <br><br> PLAINTIFF, <br><br> VS. <br><br> NET HEALTH SYSTEMS, INC., <br><br> DEFENDANT. | **PLAINTIFF HOPE INTERNATIONAL HOSPICE INC.'S COMPLAINT** <br><br> Case No.: |

Plaintiff HOPE INTERNATIONAL HOSPICE, INC. ("Plaintiff" or "HIH") complaints against Defendant NET HEALTH SYSTEMS, INC. ("Net Health," or "Vendor") as follows:

## PARTIES, JURISDICTION AND VENUE

1. HIH is a California corporation with its principal place of business in Los Angeles County, California.

2. Net Health, previously known as SYNAPTICA, INC., is a Pennsylvania corporation and its principal place of business is in Allegheny County, Pennsylvania. Net Health is the successor in interest to Hospice Management, LLC ("HML") dba "Hospicesoft" under a Subscription Agreement between HIH and HML at issue in this case.

3. On or about May 22, 2017, Optima Healthcare Solutions, LLC, acquired Hospicesoft and integrated the software into its existing cloud-based software for post-acute care providers.

4. On or about February 26, 2019, HML was dissolved and merged into Optima Healthcare Solutions, LLC pursuant the Articles of Merger filed with the Florida Secretary of State bearing Document Number L15000105383.

5. On or about December 31, 2020, Optima Healthcare Solutions was wholly acquired by Net Health pursuant to a Statement of Merger filed with the Pennsylvania Secretary of State.

6. The amount in controversy in this case, exclusive of interest and costs, exceeds the sum of $75,000.

7. This Court has diversity jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and Plaintiff is domiciled in California and Vendor is domiciled in Pennsylvania.

8. This Court has jurisdiction over this action pursuant to Paragraph 21 of the Subscription Agreement (defined below) and because the parties entered into the Subscription Agreement in Utah.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

10. HIH provides hospice services in Southern California, including inpatient respite services and facility room and board (collectively, the "Services"), to nursing care facilities.

11.     On March 11, 2013, HIH and Vendor's predecessor in interest (collectively, the "Parties") entered into the Subscription Agreement.

12.     A true and correct copy of the Subscription Agreement, with certain confidential business terms redacted, is attached as **Exhibit 1.**

13.     To induce Plaintiff's business, Vendor represented itself to be competent to perform under the Subscription Agreement in compliance with industry standards, including having proficiency with RAD codes for federal, state, and county payors, the likes of Medicare, Medicaid, Medi-Cal, Medi-Cal Restricted (County) as well as private insurance ("Healthcare Insurance Programs").

14.     Under the Subscription Agreement, Vendor agreed to bill and collect payment for the Services from the patients' insurers, including Medicare/Medi-Cal, Medicaid, or other private insurance companies.

15.     Among others, Vendor's obligations under the Subscription Agreement included processing and submitting claims to the insurers, pursuing adjudication of any reimbursement dispute with the insurers, and negotiating the reimbursement rates payable by the insurers for the Services.

16.     To facilitate Vendor's performance under the Subscription Agreement, Vendor required Plaintiff to license Vendor's software platform and use it to submit all insurance claims related to the Services.

17.     At all relevant times, HIH used Vendor's application(s) and codes to submit the corresponding requests for reimbursements.

18.     Beginning in 2017 and coinciding with Optima's acquisition and integration of Hospicesoft into its existing post-acute care software, Vendor's services under the Subscription Agreement became severely deficient due to Vendor's gross negligence, which included submitting reimbursements for less than the amount due and failing to collect on outstanding invoices.

19. Vendor's omissions and errors were readily apparent to Vendor, who received remittance advices from insurers like Medi-Cal identifying multiple mistakes, including improper provider number designations and RAD Code violations.

20. Additionally, between 2019 and 2021, Plaintiff repeatedly asked Vendor to address the mistakes.

21. Vendor's representatives acknowledged Vendor's failures, but Vendor did not take any steps to rectify these issues and Vendor continued to provide inadequate services until the end of the Parties' relationship.

22. Through its gross negligence, Vendor underbilled or failed to collect for the Services by at least $1,933,469.18 (the "Claim") and caused HIH to lose significant goodwill and business relations.

23. Pursuant to the Subscription Agreement's dispute resolution clause, the Parties attempted to mediate HIH's demand for the Claim, but the negotiations were unsuccessful.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

24. Plaintiff incorporates the foregoing paragraphs.

25. The Subscription Agreement is a valid and enforceable contract.

26. Plaintiff performed under the Subscription Agreement by, among other things, providing the requisite information to Vendor and paying Vendor the fees required by the Subscription Agreement.

27. Vendor breached the Subscription Agreement failing to process adequately insurance claims for the Services despite multiple notices about, and opportunities to address them.

28. In failing to adopt or implement protocols commonly practiced in the healthcare billing and collection industry, Vendor failed to observe even slight care and was reckless or utterly indifferent to the harm it could cause to HIH.

29.     As a direct and proximate result of Vendor's breaches and gross negligence, Plaintiff sustained damages in the amount of the Claim.

30.     As a result of Vendor's breach of the Subscription Agreement, Plaintiff is entitled to judgment in the amount of the Claim, plus pre and post judgment interest, legal costs, and attorneys' fees as prescribed by the Subscription Agreement.

## SECOND CLAIM FOR RELIEF
(Breach of Covenant of Good Faith and Fair Dealing)

31.     Plaintiff incorporates the foregoing paragraphs.

32.     The Subscription Agreement includes an implied covenant of good faith and fair dealing.

33.     Under the implied covenant, HIH justifiably expected to receive the benefit of the Subscription Agreement, including that Vendor would properly process and collect insurance claims for the Services.

34.     Vendor unfairly interfered with Plaintiff's right to receive the benefits contemplated by the Subscription Agreement by, among other things, concealing Vendor's failures or omissions in processing the reimbursements, and preventing HIH from accessing information necessary to address Vendor's breaches.

35.     As a direct and proximate result of Vendor's breach of the covenant of good faith and fair dealing, Plaintiff has been damaged in an among equal to or exceeding the Claim, plus pre and post judgment interest, attorneys' fees and costs of collection as allowed by law and under the Subscription Agreement.

## THIRD CLAIM FOR RELIEF
(Gross Negligence)

36.     Plaintiff incorporates the foregoing paragraphs.

37.     Vendor failed to adopt or implement protocols commonly practiced in the healthcare billing and collection industry, including verifying the accuracy of the claims submitted for the Services, and procedures to address and dispute any rejection of such claims.

38. Vendor failed to observe even slight care and was reckless or utterly indifferent to the harm it could cause to HIH when it failed to address its errors and omissions even after being notified of the same by the insurers and Plaintiff.

39. As a direct and proximate result of Vendor's gross negligence, Plaintiff has sustained damages in an amount to be proven at trial, inclusive of the Claim.

## FOURTH CLAIM FOR RELIEF
(Negligent Misrepresentation)

40. Plaintiff incorporates the foregoing paragraphs.

41. After Plaintiff notified Vendor of Vendor's failure to remit monies owed to Plaintiff, Vendor represented to Plaintiff that Vendor would cure the defects and re-submit the claims that the insurers had denied because of Vendor's errors and omissions.

42. Vendor's representations were false and designed to induce Plaintiff's continuous use of Vendor's billing platform despite Vendor's errors and omissions.

43. Plaintiff relied on Vendor's representations and Plaintiff's reliance on such representations was a substantial factor in causing Plaintiff to continue using Vendor's invoicing platform and in causing the damages that Plaintiff sustained because of Vendor's errors and omissions.

44. As a direct and proximate result of Vendor's negligent misrepresentation, Plaintiff has been damaged in an amount to be proven at trial, inclusive of the Claim.

## FIFTH CLAIM FOR RELIEF
(Promissory Estoppel)

45. Plaintiff incorporates the foregoing paragraphs.

46. Upon noticing discrepancies between its receivables and the remittances received from the insurers, Plaintiff inquired and learned that Vendor's insurance claims frequently failed to include the correct provider number, frequently failed to follow Medicare and MediCal claim procedures, and were often untimely.

47. To induce Plaintiff's continuous use of Vendor's platform, Plaintiff represented it would take adequate steps to address the discrepancies and would re-submit and litigate any rejected claims.

48. Plaintiff relied on Vendor's promises by, among other things, continuing to use Vendor's billing platform and foregoing the opportunity to re-submit the rejected claims.

49. Vendor's promises were false or misleading as Vendor did not address any of the issues raised by Plaintiff.

50. Plaintiff's reliance on Vendor's promise was a substantial factor in causing Plaintiff harm, including Plaintiff's inability to re-submit nearly $2 million in claims to the insurers.

51. As a direct and proximate result of Vendor's false promises, Plaintiff has been damaged in an amount to be proven at trial, inclusive of the Claim.

### SIXTH CLAIM FOR RELIEF
(Unfair Business Practices under Utah Code § 13-5-1 *et seq*)

52. Plaintiff incorporates the foregoing paragraphs.

53. By engaging in unfair conduct to violate enforceable and valid contracts, Vendor has violated the proscription against unfair business practices.

54. Vendor's unfair business practices include misrepresenting its attempts to cure defective billing claims to induce Plaintiff into continuing to use Vendor's billing platforms, advertising familiarity with the applicable insurance claim regimes and proficiency in the insurance claim processing industry, and intentionally or wantonly breaching agreements in reliance on their purported limitation of liability provision.

55. Vendor's misrepresentations constitute unfair methods of competition, including unlawful, unfair, and negligent acts or practices in the conduct of trade and commerce, in violation of Utah Code Ann. § 13-5-1 *et. seq.*

56. As a direct and proximate result of these actions, conduct, and practices, HIH is entitled to disgorgement and restitution in the amounts representative of the ill-gotten gains unlawfully received by Vendor with interest and injunctive relief, as well as an award of attorney's fees and costs, pursuant to Utah Code Ann. § 13-5-14.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all issues and claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Hope International Hospice, Inc. prays for relief against Vendor as follows:

1. For compensatory damages exceeding $1,933,469.18;
2. For pre- and post-judgment interest;
3. For attorney fees, pursuant to the terms of the Subscription Agreement and Utah Code Ann. § 78B-5-826;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court deems proper.

DATED: October 12, 2022

                        HOLLAND & HART LLP

                        /s/ Engels J. Tejeda
                        Engels J. Tejeda
                        Kody L. Condos
                        *Attorneys for Plaintiff, Hope International Hospice, Inc.*

Plaintiff's Address:
HOPE INTERNATIONAL HOSPICE, INC.
20705 S. Western Ave, Suite 112,
Torrance, CA 90501